IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03313-KLM

AMY MARCANTONIO,

     Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,

     Defendant.

_____

**ORDER**

_____

This matter is before the Court on Defendant's **Motion to Compel Request for Inspection** [#58][1] (the "Motion").  Plaintiff filed a Response [#59].  For the reasons set forth below, the Motion [#58] is **DENIED without prejudice.**

In short, this is a dispute about termination of Plaintiff's employment.  Defendant seeks to inspect Plaintiff's "personal computer which she used from January 1, 2008 until her termination from employment on March 13, 2013."  Defendant states that the purpose of the inspection will be "to inspect emails [Plaintiff] sent to her personal email accounts . . . from her Comcast email account from January 1, 2008 until her termination from employment on March 13, 2013. . . ." [#58-1] at 1.  Plaintiff counters that the request is designed to harass her, among other objections. [#59] at 3.  She further states that "there is no physical computer in Plaintiff's possession for Defendant to inspect."  *Id.*

---

[1]  "[#58]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  The Court uses this convention throughout this Order.

There are several curious things about this discovery dispute which bear mentioning. First, counsel for the parties followed my discovery procedures by first bringing this issue to my attention orally at a discovery hearing. I ordered them to further confer and to brief the issue, expecting to receive ample legal authority for the request and for Plaintiff's position in response. Instead, Defendant's brief cites three cases where inspection of computers was permitted (only two of which address inspection of computers relating to alleged misuse of company information) and cites no legal authority for its central contention, which is that "Defendant has the right to investigate the extent to which Plaintiff improperly retained thousands of pages of emails and documents in order to determine the applicability of, and ultimately prove, the after-acquired evidence defense." [#58] at 2-3. I decline to do Defendant's research and make the argument for it. *See Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[D]istrict courts . . . have a limited and neutral role in the adversarial process, and [ought to be] wary of becoming advocates who comb the record . . . and make a party's case for it."); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Plaintiff's brief includes no legal authority whatsoever. I also decline to do Plaintiff's legal research.

Second, all of this wrangling appears to be about inspection of a computer that might not exist. As indicated above, Plaintiff contends that she has no personal computer for Defendant to inspect. She says that in her brief, *see* [#59] at 3, and she says that in her Amended Response to Defendant's Amended Request for Production/Inspection to

Plaintiff: "While I was employed by Comcast I used a Comcast issued laptop computer to access my personal email accounts, and I returned that company issued laptop computer to Comcast at the conclusion of my employment. I did not have a separate computer during the time that I was employed by Comcast." [#59-2] at 2.  However, excerpts from Plaintiff's deposition, supplied to the Court *by Plaintiff*, suggest otherwise.  The following exchange occurred during Plaintiff's deposition on June 30, 2015, which was reconvened for the express purpose of allowing defense counsel to ask questions about the emails Plaintiff had forwarded:

> Q:    With respect to your personal computer, did you – when you forwarded these emails, did they all go to your personal computer?
> . . .
> A:    They went to my personal email.
> Q:    Okay. On your personal computer?
> A:    On – they went to my personal email, which I could access from my personal computer.
> Q:    And that was my next question.  How did you access these documents?  Did you access them from your personal computer?
> A:    No.  I believe that – now I would access them from my personal computer, but they were on my work computer.
> Q:    Right. But they were forwarded to your personal computer, correct?
> A:    So that I could access my personal email. Correct.

[#59-1] at 6.  To the uninitiated ear of the undersigned, this testimony sounds like Plaintiff admitting under oath that she had a personal computer while she worked at Comcast and that she has one now.  Which would make the two statements to the contrary mentioned earlier, one of which is also signed under oath by Plaintiff, untrue.  Defendant does nothing to address this inconsistency or to otherwise attempt to unravel the mystery of whether Plaintiff actually possesses any computer which it might inspect.  Again, I decline to do Defendant's work for it or to draw conclusions about apparently contradictory testimony without an appropriate opportunity to assess the witness' credibility.

Perhaps most curious of all is the lack of explanation of the document production to date in this case, and of exactly what information Defendant expects to obtain from inspecting Plaintiff's personal emails from her personal computer which may or may not exist.  Both sides appear to agree that Plaintiff forwarded Comcast emails to her personal email account or accounts. [#59] at 2; [#58] at 2.  Plaintiff contends that her counsel went through her personal email accounts and "extracted every Comcast email" from them, "then produced pdfs of every non-privileged email to Defendant on February 5, 2015, along with a privilege log." [#59] at 2.  Defendant does not even mention getting hard copies of the emails themselves back.  Instead Defendant makes brief mention of the possibility of embedded data and metadata, but does not explain how that information would be relevant in this situation, where the emails were forwarded from Plaintiff's email address at Comcast to her personal email accounts.  Of what importance is information about any potential deleted matter (i.e., embedded data) or the history of these emails (i.e., metadata) to Defendant's defense of the lawsuit?  Absent such information, Defendant's request appears to be designed merely to snoop, which is of course not allowed.

As I have held many times, when the relevancy of a request for discovery is not readily apparent, the party who is making the discovery request has the burden of showing the relevance of the requested information.  *See, e.g.*, *Carbajal v. St. Anthony Central Hosp.*, No. 12-cv-02257-REB-KLM, 2014 WL 3746967, at *2 (D. Colo. July 30, 2014) (citation omitted); *Stanton v. Encompass Indem. Co.,* No. 12-cv-00801-PAB-KLM, 2013 WL 2423094, at *2 (D. Colo. June 4, 2013) (citations omitted).  Especially in light of the other curious issues addressed above, Defendant has not met that burden here.  Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#58] is **DENIED without prejudice.**

Dated:  August 25, 2015                          BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge