IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03313-KLM

AMY MARCANTONIO,

    Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendant's **Motion for Summary Judgment** [#61][1] (the "Motion"). Plaintiff filed a Response [#63] and Defendant filed a Reply [#64]. For the reasons set forth below, the Motion [#58] is **GRANTED.**

**I. Background**

In short, this is a dispute about termination of Plaintiff's employment. Plaintiff contends that she was employed as a Director in Defendant Comcast Cable Communications Management, LLC's ("Comcast") Mile High Region, that she was viewed as a rising star within the company, that she was wrongfully terminated in violation of Colorado law, and that after termination of her employment, "Comcast held a meeting where it was announced that [Plaintiff] had been terminated for unethical behavior, comparing her actions to disgraced cyclist Lance Armstrong." *Response* [#63] at 1.

---

[1] "[#61]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

Defendant contends that Plaintiff's employment was terminated after an employee submitted an anonymous complaint reporting that she had encouraged her subordinates to enter false prospects into a sales management database to gain an advantage in a company competition. *Motion* [#61] at 9. Defendant further asserts that it received other complaints about Plaintiff and her department around the same time, including "allegations of bribery, favoritism, retaliation, hostile work environment and other general ethics issues." *Id.* at 10. The company conducted an investigation and decided to terminate five employees, including Plaintiff. *Id.* at 12.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his

claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that adhere to the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>> ...
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III.  Analysis

Plaintiff asserts four claims relating to termination of her employment: (1) wrongful discharge in violation of public policy; (2) breach of -implied-in-fact contract; (3) promissory estoppel and (4) defamation. *Am. Compl.* [#9] at 4-6. The Court examines each claim in

turn.

### A.     Wrongful Discharge in Violation of Public Policy

Plaintiff contends that she was wrongfully terminated because of her gender, in violation of the Colorado Anti-Discrimination Act ("CADA"). However, rather than asserting this claim pursuant to CADA, she premises this claim on the common law theory of wrongful discharge in violation of public policy. *Am. Compl.* [#9] ¶¶ 48-51.  Defendant asserts that she may not rely on CADA as a basis for this common law claim, because CADA itself contains a remedy for discriminatory discharges.  *Motion* [#61] at 16-18. Defendant relies on several cases which Defendant contends stand for the general proposition that common law actions for wrongful discharge will not lie "where a statute provides a wrongful discharge remedy."  *See, e.g.*, *Casper v. Lucent Technologies, Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003); *Spaziani v. Jeppesen Sanderson, Inc.*, 2015 WL 5307971, at *3-4 (D. Colo. Sept. 11, 2015); *Gatuma v. Encore Electric, Inc.*, 2012 WL 5354932, at *3-5 (D. Colo. Oct. 30, 2012).  On the other hand, Plaintiff points out that at least one District Judge in this District has held that "wrongful discharge claims premised on CADA are an exception to the general rule" that such claims are unavailable when premised on a statute that provides a remedy.  *See, e.g.*, *Kennedy v. Colorado RS, LLC*, 872 F. Supp. 2d 1146, 1149 (D. Colo. 2012) (collecting cases).

In determining whether a Colorado statutory right supplants a common law right, "statutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication."  *Alarid v. MacLean Power LLC*, --- F. Supp. 3d ---, 2015 WL 5444295, at *3 (D. Colo. Sept. 16, 2015) (citing

4

*Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 68 (Colo. 1995)). It is true that courts considering CADA's preemptive effect in the context of wrongful discharge claims have reached different results. As noted above, Judge Wiley Daniel has found *Brooke* dispositive in ruling that a wrongful discharge claim premised on CADA was not preempted. *Kennedy,* 872 F.Supp. 2d at 1150-51. Other courts, without relying on *Brooke*, have reached the opposite conclusion. *See Gatuma,* 2012 WL 5354932, at *4. However, Defendant does not argue that the Colorado legislature manifested its intent to abrogate a common law right by enacting CADA "explicitly or by clear implication." Like the Court in *Alarid*, this Court concludes that the Colorado Supreme Court has expressly approved the availability of common law claims as "cumulative remedies" for victims of sexually discriminatory conduct in the workplace. *Horodyskyj v. Karanian*, 32 P.3d 470, 479 (Colo. 2001). Indeed, the Colorado Supreme Court has not retreated from its conclusion that CADA does not "implicate a legislative intent to exclusively address the impact of discrimination on the individual claimant." *Alarid*, 2015 WL 5444295, at *4, citing *Brooke*, 906 P.2d at 69.

> In *City of Colorado Springs v. Conners,* 993 P.2d 1167, 1174 (Colo. 2000), the [Colorado Supreme C]ourt reiterated that the Colorado Civil Rights Act ("CRA") 'was not designed primarily to compensate individual claimants but rather to eliminate discriminatory practices as defined by the Act.' The forms of relief available under CADA 'are equitable in nature and are aimed at eliminating workplace discrimination, not compensating individuals for their particular injuries arising from violations of the CRA.'

*Id.* Accordingly, in the absence of a more detailed showing that the Colorado legislature intended for CADA to be the exclusive remedy against an employer who wrongfully discharges an employee because of her gender, the Court is inclined to agree with Plaintiff that a claim for wrongful discharge in violation of CADA is legally cognizable.

However, Defendant further asserts that Plaintiff's "theory that she was terminated because of her gender is solely based on speculation and, therefore, does not create a genuine issue of material fact." *Motion* [#61] at 19. Defendant points to Plaintiff's deposition testimony, specifically her answer to a question about why she believes that she was fired because of her gender: "[I]t's the only thing that I can come up with. Having been involved in so many investigations and gone through the process, the only thing I can come up with is that it has to have been – I'm being treated differently because I'm a woman." *Id.* at 13 (quoting [#61-5] at 136). Defendant further asserts that the only other evidence in support of Plaintiff's conclusion is an alleged statement by her former boss, Richard Jennings, that "people want female leaders to be softer . . . and warmer." *Id.* at 20. Defendant suggests that assuming this comment was actually made, it is at most a "stray remark" which cannot support a finding of discrimination. *Id.* (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

For her part, Plaintiff cites to evidence which she believes "demonstrate[s] that Comcast subjected [her] to discriminatory stereotypes from management, human resources, and her subordinates." *Response* [#63] at 13. Such evidence includes that despite her excellent job performance, she was not promoted to a position as Vice President because "she needed to be softer and warmer." *Id.* Also, she asserts that during litigation, the company blamed her failure to advance on subordinates' complaints about her, but never told her about any of those complaints except one. *Id.* at 14. Despite a highly complimentary final written performance review, "Defendant's witnesses all deny providing the content and attribute it to other witnesses." *Id.* at 7. In sum, Plaintiff asserts that she "didn't fit the mold for traditional female leaders," and was passed over for

6

promotion despite excellent performance.  *Id.* at 13.

However, as Defendant notes, Plaintiff's claim is for *wrongful discharge in violation of public policy*, not unlawful discrimination under CADA or Title VII.  The elements of a wrongful discharge claim include "that the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege, that the action directed by the employer would undermine a clearly expressed public policy relating to the employee's right or privilege as a worker, and that the employee was terminated as a result of refusing to perform the act directed by the employer."  *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992).  In general, Colorado law requires proof of both some "protected activity" by the Plaintiff (refusal to perform an unlawful act, exercise of an employment right, or performance of a public duty), as well as proof that the protected activity caused termination.  S. Gallagher, K. Miller, & J. Brown, *The Practitioner's Guide to Colorado Employment Law*, Vol. I at § 6.3.3 (2d. Ed. Oct. 2015 Supp.)

Plaintiff makes no effort to point to facts which demonstrate that she engaged in protected activity which caused her termination.[2]  *Response* [#63] at 12-14.  Even construing the facts she asserts in the light most favorable to her, the Court cannot find any evidence of disputed facts relating to her refusal to perform an illegal act, her exercise of

---

[2] Indeed, Plaintiff's Response contains only a single reference to an alleged fact which might be construed as a protected activity, i.e., Plaintiff "told Mr. Dack that she was concerned that she was being discriminated against because of her gender." [#63] at 6.  However, Plaintiff fails to show any connection between Mr. Dack and/or this comment and her subsequent termination.

an employment right, or her performance of a public duty.[3]  Moreover, there is no genuine issue of material fact regarding whether such actions caused her termination.  *See, e.g.*, *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1235 (10th Cir. 1997) ("The plaintiff must also show that the employee was terminated as the result of refusing to perform the act directed by the employer.").  As a result, summary judgment must enter for Defendant on this claim. *See Anderson*, 477 U.S. at 248 (1986).

**B.    Breach of Implied Contract and Promissory Estoppel**

Plaintiff concedes that her claims for breach of implied contract and promissory estoppel relate to her contention that she was denied what is commonly referred to as progressive discipline.  She contends that Comcast's Human Resources personnel "provid[ed] employees with multiple opportunities to explain or correct behavior" before discipline was imposed. *Response* [#63] at 15.  She further asserts that she herself was "required by Human Resources to follow progressive discipline practices when coaching or disciplining employees in every situation. . . ." *Id.*  She contends that she "relied on Comcast's policies" in this regard during her own employment, and "had she known that she was not going to be treated fairly and in accordance with Comcast's policies, she could have done more to protect herself and prevent her termination." *Id.*

Defendant argues that no such "progressive discipline policy" exists, that Plaintiff admitted that no one ever made any promise to her that Comcast would apply such a policy to her before terminating her employment, and that her claims fail as a matter of law.

---

[3] While Plaintiff relies heavily on Judge Daniel's holding in *Kennedy*, the dissimilarity of that case to the one here is particularly revealing: in *Kennedy*, the plaintiff alleged that he was terminated because his supervisor, the defendant, instructed him to lie to the police and he refused.  *Kennedy*, 872 F. Supp. 2d at 1147-48.  No such allegation exists here.

*Motion* [#61] at 22; [#61-5] at 168; *Reply* [#64] at 11. The Court agrees. First, the evidence is undisputed that there is no "progressive discipline" policy in Comcast's Employee Handbook and Code of Conduct. [#61-5] at 153. Second, Plaintiff does not dispute that no one at Comcast promised to apply a progressive disciplinary policy to her during her employment. [#61] at SOF ¶ 53; [#61-5] at 168. Third, Plaintiff acknowledged, by signing the Employee Handbook, that it was not a contract and did not alter her status as an at-will employee. [#61] at SOF ¶ 9; *Response* [#63] at 2. Fourth, Plaintiff's subjective belief that such a policy existed is insufficient to create a genuine issue of material fact to avoid summary judgment. *See Bones*, 366 F.3d at 875 (conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence). Finally, Colorado law is well-established that both implied contract and promissory estoppel claims are barred by a clear and conspicuous disclaimer, such as the one contained in Comcast's Employee Handbook. [#61-3]; *Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517, 1520-23 (D. Colo. 1987); *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo. App. 1990); *Silchia v. MCI Telecommunications Corp.*, 942 F. Supp. 1369, 1376 (D. Colo. 1996); *Snoey v. Advanced Forming Tech., Inc.*, 844 F. Supp. 1394, 1399 (D. Colo. 1994). Accordingly, summary judgment in favor of Defendant is appropriate on these claims.

**C.    Defamation**

Plaintiff asserts that "following her termination, Defendant, through its agents and employees, made slanderous statements regarding Plaintiff to approximately 90 employees in the Mile High Region, maliciously claiming that she was terminated for 'unethical' behaviors and comparing her to Lance Armstrong." *Final Pretrial Order* [#68] at 5.

Defendant asserts that Mr. Jennings and another supervisor, Mr. Adamson, had a qualified privilege to discuss with Comcast's employees the circumstances surrounding Plaintiff's termination. The company asserts that to rebut the presumption that the alleged defamatory communications were made in good faith and without malice, Plaintiff must show that Mr. Jennings and Mr. Adamson acted with malice, "that is, knowing the matter to be false or in reckless disregard of its truth." *Motion* [#61] at 25-26.

For her part, Plaintiff contends that "Comcast abused its right to a qualified privilege by failing to perform a fair and thorough investigation." *Response* [#63] at 16. She argues that the existence of malice, the question of good faith on the part of the Defendant and the company's honest belief in the truth of the supervisors' statements are "matters of fact which are to be determined exclusively by the jury." *Id.* at 17.

Under Colorado law, when an employer makes statements about an employee's termination, the statements are generally protected by a qualified privilege. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1343-45 (Colo. 1988). As noted by Defendant, the privilege "creates a presumption that the alleged defamatory communication was made in good faith and without malice." *Williams v. Boyle*, 72 P.3d 392, 401 (Colo. App. 2003). To rebut the presumption, Plaintiff must show that Defendant made the statements with malice, "that is, knowing the matter to be false or in reckless disregard of its truth." *Id.* Reckless disregard means "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement, or acted with a high degree of awareness of its probable falsity." *Spacecon Speciality Contractors v. Bensiger*, 713 F.3d 1028, 1041-42 (10th Cir. 2013).

As noted above, the alleged defamatory statements at issue here were made by Mr.

Jennings and Shawn Adamson, Defendant's Vice President of Business Services. *Motion* [#61] at 14-16. Plaintiff attempts to create a genuine issue of material fact about the supervisors' state of mind by alleging that they failed "to perform even a cursory review of the . . . complainants' employment and disciplinary status," thus "tarnishing the credibility of the investigation" conducted by the company into allegations of her supposed unethical conduct. *Response* [#63] at 17. She alleges that "Comcast declined to interview two of her direct reports during the investigation, because Human Resources was only interested in seeking information from people who would provide the information they wanted to hear." *Id.* She further states that "the Defendant chose to simply ignore facts that did not support the direction in which they wished the investigation to lead," but fails to specify what these ignored facts were. *Id.* at 18. She finally alleges that "Comcast actually withheld information regarding the provisioning issue for five months, and Human Resources did nothing to investigate or curtail irregular provisioning practices, until it was used against [Plaintiff] at the time of her termination." *Id.*

Even assuming, arguendo, that Plaintiff's allegations about the investigation are true, the Court is unable to conclude that they create a triable fact issue on her defamation claim. There is simply no evidence that Mr. Jennings or Mr. Adamson "entertained serious doubts" about the reason for Plaintiff's termination, or that they "acted with a high degree of awareness of its probable falsity." *Spacecon*, 713 F.3d at 1041-42.[4]  As Defendant

---

[4] The only evidence cited by Plaintiff which suggests that Defendant was aware of doubts about the reasons for her termination is an alleged telephone call from "Mr. Hamstad" during which he told her that she was being terminated although she "might not have done anything wrong." *Response* [#63] at 11. However, Plaintiff may not rely solely on her own uncorroborated, self-serving and conclusory testimony to establish a genuine issue of material fact. *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004) (holding that a sworn affidavit based only on personal knowledge is insufficient to create a triable issue of fact if it is self-serving and not otherwise supported by the record).

11

points out, it is undisputed that Comcast received numerous complaints about Plaintiff, conducted an investigation, interviewed her and many other employees, and prepared two reports on which Mr. Jennings relied in making his decision to fire five employees, including Plaintiff. *Motion* [#61] at SOF ¶¶ 39-47; *Response* [#63] at 2.[5]  According to Defendant, Plaintiff was terminated because of "the overwhelming number of complaints raised against her for business integrity issues," and because she was "ultimately responsible for the widespread fraud that occurred in connection with" the sales competition. *Motion* [#61] at 12-13. Mr. Jennings and Mr. Adamson subsequently stated to employees of the Business Services Department that Plaintiff had been terminated for unethical behavior, in accordance with the investigative conclusions. *Motion* [#61] at ¶ 56; *Response* [#63] at 2; *Reply* [#64] at 14.  There is nothing in this scenario to suggest malice, and mere negligence in investigating facts is insufficient to show actual malice. *Dominguez v. Babcock*, 727 P.2d 362, 367 (Colo. 1986).   In the absence of evidence of actual malice, entry of summary judgment in favor of Defendant on Plaintiff's defamation claim is appropriate.

## IV.  Conclusion

For the reasons set forth above,

IT IS **ORDERED** that Defendant's Motion for Summary Judgment [#61] is **GRANTED**.

IT IS FURTHER **ORDERED** that the **jury trial** scheduled to begin on March 7, 2016

---

[5]  Although Plaintiff states that she disputes Defendant's SOF ¶¶ 44, 45-47, *see Response* [#63] at 2, none of the statements of facts she offers in rebuttal actually dispute Defendant's statements, such as whether the complaints were filed or whether five employees (including Plaintiff) were terminated.  *See Response* [#63] at SOF ¶¶ 1-68.  Rather, Plaintiff "disputes" whether, for example, the complaints were legitimate; not whether there were actually complaints.  *Id.* at SOF ¶ 57-59.

at 9:00 a.m. is **VACATED.**

Dated: February 29, 2016

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge